UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KARL CHRISTOPHER WRIGHT, III,

      Plaintiff,

v.             Case No. 17-cv-64-pp

RAFAEL BRITO and JAMES
RAMSEY-GUY,

      Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 38), DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 50) AND DISMISSING CASE**

  The plaintiff, who is representing himself, filed this complaint under 42 U.S.C. §1983. Dkt. No. 1. The court allowed him to proceed on a Fourteenth Amendment claim that the defendants used excessive force against him, allegedly beating and sodomizing him. Dkt. No. 12. The defendants filed a motion for summary judgment. Dkt. No. 38. The plaintiff filed an objection/response to that motion, dkt. no. 51, as well as his own motion for summary judgment, dkt. no. 50. The court will deny the plaintiff's motion, grant the defendants' motion, and dismiss the case.

**I.  RELEVANT FACTS**

  Civil Local Rule 56(b)(2)(B) requires that a party who opposes a motion for summary judgment must, within thirty days of service of the summary judgment motion, file "a concise response to the moving party's statement of

1

facts." On October 17, 2017, the court issued its scheduling order; it attached to the order a copy of relevant local rules, including Civil Local Rule 56. Dkt. No. 25. On May 15, 2018, the court received a letter from the plaintiff, asking for information about the litigation process. Dkt. No. 37. The clerk's office responded by sending him a copy of the local rules—including Rule 56(b)(2)(B)—and a brochure with answers to frequently-asked questions. On May 21, 2018, the defendants filed their motion for summary judgment. Dkt. No. 38. They attached Civil L.R. 56 to the motion, as they were required to do in a case involving a *pro se* plaintiff, so the plaintiff received the rule a *third* time. Despite receiving the rule three times, the plaintiff did not respond to the defendants' proposed findings of fact. Accordingly, the court takes the facts from "Defendants' Proposed Findings of Fact in Support of Motion for Summary Judgment." Dkt. No. 39. Under Federal Rule of Civil Procedure 56(e)(2), the court will consider the defendants' proposed facts undisputed for the purposes of this motion.

The plaintiff informed the court in the complaint that he is mentally ill. Dkt. No. 1 at 3. The complaint alleged that between May and August 2016, he was housed in the Milwaukee County Jail, in segregation—Pod 4-D room/cell #27. Id. at 2. (Pod 4D is "a housing unit within the Jail specific to inmates serving and/or pending discipline." Dkt. No. 39 at ¶94.) The plaintiff alleged that during first shift, sometime between May 4 and May 17, 2016, the defendants came into the cell and beat him with closed fists and put an

unknown object in his buttocks. Dkt. No. 1 at 2-3. The plaintiff asserted that because of his grief, he couldn't identify the exact date of this event, but he says that he reported it to Lt. Sobek and Lt. Hannah, and that he filed grievances "right away." Id. The complaint also alleged that the plaintiff yelled the incident to a nurse outside his cell, and that a doctor heard it. Id. at 3.

The defendants indicate that personnel in the sheriff's office first learned of the alleged incident when they received a one-page letter from the plaintiff, dated September 22, 2016 and addressed to Milwaukee County Fiscal Affairs. Dkt. No. 39 at ¶128. The plaintiff sent a second letter, this one addressed to the Milwaukee County Internal Affairs Division, on November 21, 2016. Id. at ¶129. Detective Larrel Lirette was assigned to investigate the claims contained in the letters. Id. at ¶130. Lirette interviewed the plaintiff on two separate occasions, but at that time (presumably the fall of 2016, a month or so before the plaintiff filed this complaint), he couldn't be specific about the date of the assault; he indicated only that it happened between January 1, 2016 and August 24, 2016. Id. at ¶131. Without a more definite time frame or substantiating details, Detective Lirette deemed the plaintiff's claims were unfounded. Id. at ¶132. It was a couple of months later, in the complaint he filed in January 2017, that the plaintiff narrowed the time frame to sometime between May 4 and May 17, 2016.

The defendants were able to confirm that the plaintiff has been an inmate at the Milwaukee County Jail at various times over the years, id. ¶1,

3

and that he was incarcerated there between January 1 and August 23, 2016, id. ¶3. Both defendants—Brito and Ramsey-Guy—worked at the jail as corrections officers during that time. Id. at ¶¶20, 30. The two individuals the plaintiff indicates he informed about the incident—Capt. Sobek and (then) Lt. Hannah—also worked at the jail during that time. Id. at ¶¶46, 51-52.

At his deposition, the plaintiff testified that the alleged assault happened while Brito and Ramsey-Guy "worked together on a regular shift in 4D, after lunch was served but before shift change." Id. at ¶136. Between May 4 and May 17, 2016—the time frame the plaintiff identified in the complaint—both Brito and Ramsey-Guy were assigned to work in Pod 4D on only one day: first shift on May 8, 2016. Id. at ¶59. Brito worked from 6:30 a.m. to 2:24 p.m., "leaving the pod at various times throughout his shift to escort inmates and respond to urgent matters within the Jail." Id. at ¶60. Ramsey-Guy worked from 6:30 a.m. to 2:01 p.m. (he used personal time to leave before the 2:30 close of the shift), also leaving the pod at times for other duties. Id. at ¶¶61-62. Lunch ended at 1:03 p.m., and at that time, Ramsey-Guy took the inmate workers who'd helped with lunch service back to Pod 3D. Id. at ¶¶76-77. This would have taken him about fifteen minutes. Id. at ¶78.

The plaintiff testified at his deposition that Brito and Ramsey-Guy were working on pod 4D "by themselves" at the time of the alleged assault. Id. at ¶137. But there was someone else working in Pod 4D during first shift that day—corrections officer LeCarlin Collins. Id. at ¶¶44, 65. Collins worked on the

4

pod from around 6:30 a.m. until 2:24 p.m., with Brito and Ramsey-Guy. Id. at ¶65. For either Brito or Ramsey-Guy to have gotten into the plaintiff's cell, Collins would have had to unlock the cell door from his desk; he did not do so. Id. at ¶71. Collins was at his post all day except for bathroom breaks and lunch, and did not see the defendants assault or harm the plaintiff (on that or any other day). Id. at ¶73. He did not see Brito and Ramsey-Guy enter the plaintiff's cell alone "at any time in 2016." Id. at ¶75.

In fact, during the time of the alleged event, the plaintiff "was required to be moved by two officers and one supervisor due to his tendency to fight and resist officers." Id. at ¶14. The defendants describe the plaintiff as "a large, aggressive, unpredictable and manipulative individual." Id. at ¶15. For an officer to go into the plaintiff's cell with only one other officer was considered a security risk; three staff members were required to be present, and often there were more. Id. at ¶¶16-17. Even with three officers, the defendants indicate that it was hard to move the plaintiff. Id. at ¶19.

The plaintiff indicated in the complaint that he reported the alleged assault to Sobek and Hannah. But neither Sobek nor Hannah were working at the jail on May 8, 2016. Id. at ¶79.

The plaintiff testified at his deposition that he was wearing a "turtle suit" at the time the alleged assault took place. Id. at ¶139. Inmates who are on suicide watch must wear a green, protective gown that helps protect them from hurting themselves; inmates sometimes call this a "turtle suit." Id. at ¶12. The

5

plaintiff was not on suicide watch in May 2016, so he would not have been wearing a "turtle suit" on May 8, 2016. Id. at ¶¶11, 13.

The complaint indicated that the plaintiff filed grievances about the alleged assault "right away." After the plaintiff filed the complaint, the jail searched all the plaintiff's grievances, "but did not locate any grievance submitted by [the plaintiff] between May 2016 and August 2016 claiming that he had been sodomized and assaulted by Officers Brito and Ramsey-Guy." Id. at ¶133. The plaintiff testified at his deposition that he kept copies of all the grievances he had written, but the defendants indicate that he produced only one grievance, from December 2016—months after the date of the alleged incident. Id. at ¶134.

Both defendants deny ever physically or sexually assaulting the plaintiff. Id. at ¶¶24, 25, 35 and 36. They deny ever using excessive force or engaging in sexual misconduct against inmates in general. Id. at ¶¶22, 33. Other than the investigation prison officials conducted into the plaintiff's allegations in his complaint in this case, neither Brito nor Ramsey-Guy ever has been investigated for the use of excessive force or sexual misconduct. Id. ¶¶ 23, 34.

Although the defendants' investigation did not turn up any evidence corroborating an event such as the one the plaintiff described in the complaint, the defendants have identified an incident that may have motivated the plaintiff to make the allegations he has made. At approximately 1:00 p.m. on January 29, 2016, jail officials contacted Sobek, who was the first shift operations

6

lieutenant, due to a disturbance in pod 4B. Id. at ¶¶ 89-90. The plaintiff had "aggressively" pushed his cell door open, stolen two food trays, then locked himself back into his cell. Id. at ¶91. Sobek went to the scene and asked the plaintiff about his actions; the plaintiff told Sobel that he wouldn't be eating nutraloaf anymore, and that any time anyone opened the door to his cell, he would "do the same thing, over and over again." Id. at ¶92. (In January 2016, jail inmates on disciplinary status received nutraloaf three times a day Monday through Saturday, while inmates who weren't on disciplinary status got regular meal trays. Id. at ¶93.)

After confirming that the plaintiff was already on disciplinary status for multiple other infractions, Sobek decided to transfer him to pod 4D, the disciplinary pod. Id. at ¶94. Initially, the plaintiff complied with the procedure for restraining him to move him through the jail. Id. ¶¶96-98. But once four correctional officers got him out of his cell and were trying to put a restraint belt around his waist, the plaintiff began resisting, stopped following orders and eventually utilized a "dead weight" tactic (becoming limp and dropping all his body weight toward the ground). Id. ¶¶99-102. Sobek called for more staff to assist and decided to stabilize the plaintiff on the ground, stomach down, to allow the officers to get control over the plaintiff's movements. Id. ¶¶103-106. Once additional staff arrived (seven in all), the plaintiff began to comply and officers escorted him to pod 4D without further incident. Id. at ¶107. He arrived in Pod 4D around 1:40 p.m. Id. at ¶108.

7

Once in pod 4D, the RN supervisor, Trisha Majewski, examined the plaintiff and cleared him for placement in the pod. Id. at ¶109. Standard procedure is for medical staff to examine all inmates involved in a correctional "use of force incident." Id. at ¶110. The plaintiff told Majewski that the officers "tore apart my ass, and it's bleeding." Id. at ¶112. Majewski examined the plaintiff and found no evidence of injury or blood on the plaintiff's buttocks region. Id. She found he was in "good" condition and cleared him to return to housing. Id. at ¶113. An internal review of the incident found that the use of force was objectively reasonable. Id. at ¶114-115. Sobek observed the entire encounter and did not see any staff sodomize or stick any objects inside the plaintiff's rectum. Id. at ¶117. Neither Brito nor Ramsey-Guy were present in pods 4B or 4D that day. Id. at ¶119.

The defendants point out that the plaintiff told Damon Camarata, a licensed social worker, that "the police beat me up. Stuck a tazer in my ass and sodomized me." Id. at ¶¶45, 121. Camarata thought the plaintiff meant the Milwaukee Police Department, and he didn't find the plaintiff's allegations to be credible. Id. at ¶¶ 122, 127. He believed the plaintiff was trying to get a reaction out of him, particularly based on the plaintiff's previous manipulative and attention-seeking behavior. Id. at ¶¶125, 126.

8

## II. DISCUSSION

    A.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.  Analysis

To support a claim that a state actor is liable for violating his civil rights under §1983, a plaintiff must show that the state actor was personally involved in the alleged constitutional deprivation. Colbert v. City of Chi., 851 F.3d 649, 657 (7th Cir. 2016) (citing Minix v. Canarecci, 597 F.3d 824, 833 (7th Cir. 2010)). He must "demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." Id. (citing Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983)).

The Eighth Amendment to the Constitution protects citizens from cruel and unusual punishment. Where prison officials are accused of using excessive physical force in violation of the Eighth Amendment, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

To survive summary judgment, "[a] party opposing summary judgment may not rest upon mere allegations or denials contained in their pleadings; instead, it is incumbent upon them to introduce affidavits or other evidence setting forth specific facts showing a genuine issue for trial." Anders v. Waste Mgm't of Wis., 463 F.3d 670, 675 (7th Cir. 2006) (citations omitted).

The plaintiff has confirmed that the alleged assault only happened one time. Dkt. No. 39 at ¶135 (citing Dep. of Karl Christopher Wright, III at p. 12, Dkt. No. 41-1 at 6.) In the complaint, his motion for summary judgment (dkt.

no. 50) and his brief in opposition to the defendants' motion for summary judgment (dkt. no. 51), the plaintiff insists that it was Brito and Ramsey-Guy who assaulted him. Dkt. No. 41-1 at 10. Evidence shows that the only date the two defendants worked the same shift in the segregation pod while the plaintiff was housed there was May 8, 2016. Dkt. No. 39 at ¶59. The undisputed facts show that neither of them could have entered the plaintiff's cell that day, because Collins did not open the door for them. Id. at ¶71. The plaintiff testified that the assault took place after lunch but before first shift ended; Ramsey-Guy was out of the pod for the first fifteen minutes or so after lunch, and left a half-hour before the shift ended, leaving the two defendants together in 4D for only about forty-five minutes after lunch. Id. at ¶¶61-62, 76-78. The plaintiff testified that he was wearing a "turtle suit" at the time of the assault, but he was not on suicide watch at any time between May 4 and May 17, 2016. Id. at ¶¶ 12, 139. The plaintiff claimed that he told Sobek and Hannah about the assault the day it happened, but neither was working at the jail on May 8, 2016. Id. at ¶¶79, 138. Despite the plaintiff's claims to the contrary, there is no record that he filed a grievance about the alleged assault—jail officials couldn't fine one and the plaintiff didn't produce one during discovery. Id. at ¶¶ 133, 134.

The plaintiff's own motion for summary judgment recounts the damages the plaintiff is seeking, asserts that he wrote complaints about the incident (and told his lawyer and a state circuit court judge), asserts that he has been

hospitalized at Mendota Mental Health Institution and says that he filed a complaint under the Prison Rape Elimination Act (without providing proof of such a complaint). Dkt. No. 50. It does not address or respond to the facts presented by the defendants.

His opposition brief asserts that cameras and other inmates witnessed Brito and Ramsey-Guy entering his cell. Dkt. No. 51 at 1. He reiterates that he wrote grievances. Id. In fact, he says that while "most of [his] grievances were unanswered," "one [was] in [his] discovery," and points out that Detective Lirette interviewed him twice. Id. at 2. The plaintiff appears to think that Lirette investigated because he filed a grievance, but the evidence shows that Lirette investigated in response to letters the plaintiff to the county months later, in September and November. Dkt. No. 39 at ¶¶128-129.

The plaintiff speculates in his opposition brief that May 8, 2016 "could be the day" that he was attacked, if that's the only day Brito and Ramsey-Guy both worked in Pod 4D, and speculates that Collins "could have been the one who electronically opened the door" of his cell for Brito and Ramsey-Guy. Id. As for informing Sobek and Hannah, the plaintiff concedes that "maybe" that did not happen on May 8. Id. at 2. He disagrees with the defendants' guess that the January 29, 2016 incident is the one he's thinking of, stating that "January 29, 2016 has not anything to do with May 8, 201[6] or Sobek was not accused of being the one who attacked me." Id. He insists that "[n]o other incident with

12

any other officer is part of this case," and that he is "specifically accusing J. Ramsey Guy & Brito for assault and battery and rape . . . ." Id.

There are no facts before the court to support the plaintiff's claim that Brito and Ramsey-Guy physically or sexually assaulted him, in January 2016 or May 2016 or at any other time. The facts that are before the court indicate that no one used any force against the plaintiff during first shift on May 8, 2016, the one day that Brito and Ramsey-Guy both worked in the pod where the plaintiff was housed at the same time. The facts before the court show that there was an incident on January 29, 2016 where staff had to use force to control the plaintiff, but neither Brito nor Ramsey-Guy were involved in that incident and the plaintiff himself insists that that is not the incident of which he is complaining. Nor does the evidence support an inference that the force used on January 29, 2016 was excessive.

The court will deny the plaintiff's motion for summary judgment, because it does not demonstrate that he is entitled to judgment as a matter of law. The court will grant the defendants' motion for summary judgment, because there is no genuine dispute as to any of the facts material to the allegations, and on the undisputed facts, the defendants are entitled to judgment as a matter of law.

Finally, the defendants have requested the award of costs, disbursements and fees. Dkt. No. 40 at 18. The defendants cite no authority for this request, and Fed. R. Civ. P. 54(d)(2) requires a party seeking attorneys' fees

to file a motion, no later than fourteen days after the entry of judgment. The defendants' frustration at having to defend this suit is understandable, and they went above and beyond in trying to figure out, from a two-page complaint with no specific dates, what the plaintiff was alleging and whether there was evidence of any event that might correlate to his assertions. The court will not prohibit the defendants from filing any appropriate post-judgment motions and supporting authority. The court observes, however, that there appears to be no dispute that the plaintiff suffers from mental illness. While Ramsey-Guy indicates that the plaintiff's aggressiveness "significantly decreased after he spent time in the Mendota Mental Health Institute . . . in August and September 2016," dkt. no. 39 at ¶32, the court received notice from the plaintiff as recently as February 21, 2019 that he was back at Mendota. Dkt. No. 60.

**III.   CONCLUSION**

The court **DENIES** the plaintiff's motion for summary judgment. Dkt. No. 50.

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 38.

The court **DISMISSES** this case and will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment.

See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 11th day of March, 2019.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**